IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY BROWN,                           *

    Plaintiff,                           *

v.                                       *          Civil Action No. GLR-23-155

MAYOR AND CITY COUNCIL OF                *
BALTIMORE CITY, et al.,
                                         *
    Defendants.

                 ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Mayor and City Council of Baltimore ("Baltimore City"), Baltimore City Police Department ("BPD"), and Former Police Commissioner Dean Palmere's (collectively, "City Defendants") Motion to Dismiss (ECF No. 41); Defendants Sergeant Keith Gladstone, Detective Michael O'Sullivan, Officer Kenneth Patzman, Detective Avraham Tasher, and Detective Antonio Saunders' (collectively "Officer Defendants") Motion to Dismiss (ECF No. 42); and Defendant Detective Robert Hankard's Motion to Dismiss (ECF No. 47). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motions in part and deny them in part.

# I.   BACKGROUND[1]

## A.   **Factual Background**

This matter concerns the alleged unconstitutional arrest and prosecution of Plaintiff Timothy Brown by BPD officers, at least some of whom were associated with the Gun Trace Task Force ("GTTF"). (Am. Compl. at 3, ECF No. 33).[2] On February 12, 2014, Defendants obtained and executed a search warrant at Brown's home in Baltimore. (Am. Compl. ¶ 19). Brown lived there with his mother, and neither were home at the time. (Id. ¶ 20). Brown's mother returned about forty-five minutes after Defendants entered the house, and she was placed under arrest and charged with narcotics and firearm possession. (Id. ¶¶ 21–22). Those charges were eventually dropped. (Id. ¶ 22).

On March 26, 2014, Brown was arrested on a warrant and charged with over a dozen counts related to firearm and narcotics use and possession. (Id. ¶¶ 23, 26). Since his arrest, Brown has averred that the drugs and guns found by Defendants did not belong to him, and that Officer Defendants and Hankard (collectively, "Individual Defendants") planted the evidence in his home. (Id. at 3, ¶ 25). Brown alleges that Individual Defendants "knowingly lied" about the gun and drugs in "charging documents and other police records in an effort to falsely prosecute and falsely convict [Brown]." (Id. ¶ 37).

Brown understood, "based on statements previously made to him by one or more of the defendant officers," that if he refused to plead guilty, Individual Defendants would

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

retaliate by testifying against him at trial and arresting his mother. (Id. ¶¶ 28–29). As a result of these threats, Brown pled guilty to one count of firearm possession and one count of possession of a controlled dangerous substance with intent to distribute. (Id. ¶ 29). Brown was sentenced to nine years in prison, and he was released in 2019 after serving five years. (Id. ¶¶ 30, 33).   He suffered mental anguish, pain and suffering, and financial losses due to his unlawful incarceration. (Id. ¶ 41).

On January 21, 2020, the state of Maryland filed an amended motion to vacate judgment. (Id. ¶ 34). In the motion, the state said that Gladstone, after a separate incident, had pled guilty to conspiring with GTTF officers to deprive an individual of his civil rights by intentionally presenting false evidence. (Id.). Hankard was also convicted of a crime related to civil rights violations, (id. ¶ 61), and Saunders "is on the Baltimore City State's Attorney's list of Baltimore Police officers with integrity issues," (id. ¶ 35). The Circuit Court for Baltimore City vacated Brown's conviction and entered a disposition of nolle prosequi on all charges on March 10, 2020. (Id. at 26 n.2, ¶ 119).

Brown alleges that Individual Defendants planted evidence in his home as part of BPD's "pattern or practice" of malicious prosecution. (Id. ¶¶ 36, 39, 166). He also says that Defendants acted with malice, and that they abused their power in a way that shocks the conscience. (Id. ¶¶ 42–50). At all times, Individual Defendants acted within the scope of their employment with BPD. (Id. ¶ 51). City Defendants "not only condoned, but encouraged, rewarded, and protected" Individual Defendants' actions. (Id. ¶ 57). Palmere, as BPD's former Commissioner, failed to enact or enforce policies to ensure that officers were not acting illegally to deprive citizens of their rights, and he also personally coached

officers on providing testimony in court to shield themselves from criminal charges. (Id. ¶¶ 58–61). Further, BPD leadership "created a culture which encouraged officers to make as many arrests as possible," irrespective of the constitutionality of those arrests. (Id. ¶¶ 81, 101). BPD also purposely discouraged members of the public from filing complaints against officers, delayed investigations, and improperly classified complaints to mask misconduct. (Id. ¶ 82).

On August 10, 2016, the United States Department of Justice released a report (the "DOJ Report") summarizing "the widespread corruption and abuse within BPD." (Id. ¶ 62). The DOJ concluded that there is reasonable cause to believe that BPD engages in a pattern or practice of unconstitutional stops, searches, and arrests, using excessive force, and retaliating against people engaged in constitutionally-protected expression. (Id. ¶ 63). The DOJ found that BPD's unlawful actions had a disproportionate effect on African Americans, and Brown alleges that this disparity amounted to racial discrimination. (Id. ¶ 64). Finally, the DOJ found that BPD had "fail[ed] to use adequate policies, training, supervision, data collection, analysis, and accountability systems," (id. ¶ 65), and that BPD supervisors rarely conducted reviews of arrests to assess whether they conformed to constitutional standards, (id. ¶ 78).

Brown alleges that City Defendants were aware of these issues prior to his 2014 arrest because in June 2006, the ACLU of Maryland filed a lawsuit alleging that BPD had not trained its officers properly, and that they made thousands of illegal arrests without probable cause as a result. (Id. ¶ 69). That lawsuit settled in 2010, but an independent auditor later found that BPD was not in compliance with "more than half of the conditions

of the [settlement] agreement." (Id. ¶¶ 70–71). Further, state data shows that BPD made over 10,000 arrests between 2010 and July 2015 that resulted in no charges, and the State's Attorney's Office specifically found that 1,983 of those arrests lacked probable cause. (Id. ¶ 75).

## B.   **Procedural History**

Brown filed his original Complaint on January 20, 2023 against the aforementioned Defendants, as well as Detective Derrick Brown[3] and Officer Carmine Vignola.[4] (ECF No. 1). He later filed an Amended Complaint on June 9, 2023 against Defendants and Derrick Brown. (ECF No. 33). Brown makes the following claims in the Amended Complaint: (1) malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amendment against Individual Defendants (Count I); malicious prosecution under § 1983 and the Fourteenth Amendment against Individual Defendants (Count II);[5] malicious prosecution under Articles 24 and 26 of the Maryland Declaration of Rights against all Defendants (Count III); common law malicious prosecution against all Defendants (Count IV); negligent training, supervision, and retention against City Defendants (Count V); a Fourth Amendment Monell claim for pattern or practice of malicious prosecution against

---

[3] The record reflects that Derrick Brown was served with the original Complaint on January 27, 2023, and that his answer was due by February 17, 2023. To date, Derrick Brown has not answered or filed a dispositive motion. Accordingly, Brown will be directed to file a motion for clerks entry of default and a motion for default judgment, or show cause as to why such motions would be inappropriate, within fourteen days.

[4] Brown did not assert a claim against Vignola in the Amended Complaint, and thus Vignola will be dismissed as a Defendant in this action.

[5] Brown has abandoned this claim, so it will be dismissed. (See Opp'n Individual Defs.' Mot. Dismiss ["Opp'n Officer Defs.' Mot."] at 14 n.1 (explaining that Brown "does not contest" Defendants' arguments regarding dismissal of Count II)).

Baltimore City (Count VI); a Fourteenth Amendment <u>Monell</u> claim for pattern or practice of malicious prosecution against Baltimore City (Count VII); an Article 24 and 26 <u>Longtin</u> claim for malicious prosecution against Baltimore City (Count VIII); and conspiracy to interfere with civil rights under 42 U.S.C. § 1985 against all Defendants (Count IX). (Am. Compl. ¶¶ 113–190). He seeks compensatory damages, punitive damages, and attorneys' fees. (<u>Id.</u> ¶ 122).

Both City Defendants and Officer Defendants filed Motions to Dismiss on June 30, 2023. (ECF Nos. 41, 42). Brown filed Oppositions on July 21, 2023 and July 28, 2023, respectively. (ECF Nos. 48, 52). BPD filed a Reply on August 11, 2023, (ECF No. 62), and Officer Defendants filed a Reply on September 5, 2023, (ECF No. 64). As for Hankard, he filed a Motion to Dismiss on July 14, 2023. (ECF No. 47). Brown filed an Opposition on July 28, 2023, (ECF No. 52), and Hankard filed a Reply on August 25, 2023, (ECF No. 63).

## II.   DISCUSSION

### A.   <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u>

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.**     <u>Analysis</u>

**1.     Count I – Fourth Amendment Malicious Prosecution under § 1983**

In Count I of the Amended Complaint, Brown alleges that the Individual Defendants maliciously prosecuted him in violation of his Fourth Amendment rights under § 1983. (Am. Compl. ¶¶ 114–122).

A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." <u>Evans v. Chalmers</u>, 703 F.3d 636, 647 (4th Cir. 2012). There are three elements for a malicious prosecution claim under 42 U.S.C. § 1983: "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious . . . ; and (iii) the prosecution terminated in the acquittal or discharge of the accused." <u>Thompson v. Clark</u>, 596 U.S. 36, 44 (2022) (quoting T. Cooley, Law of Torts 180, 181 (1980)) (internal quotation marks omitted). As to the third element, "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence," but only "that the criminal prosecution ended without a conviction." <u>Id.</u> at 45.

These elements are similar to the Maryland common law standard, which requires a plaintiff to prove: "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceeding in favor of the plaintiff." <u>Candelero v. Cole</u>, 831 A.2d 495, 500 (Md.Ct.Spec.App. 2003) (quoting <u>Heron v. Strader</u>, 761 A.2d 56, 59 (Md. 2000)). Malice may be inferred from the lack of probable

cause despite being an element of the tort. <u>Talley v. Anne Arundel Cnty.</u>, No. RDB-21-347, 2021 WL 4244759, at *12 (D.Md. Sep. 12, 2021) (quoting <u>DiPino v. Davis</u>, 729 A.2d 354, 374 (Md. 1999)).

Brown has alleged sufficient facts to state a claim for malicious prosecution under § 1983. He says that Individual Defendants searched his home and planted guns and drugs, which resulted in his arrest on firearm and narcotics charges. (Am. Compl. ¶¶ 19, 25, 26, 36). Further, they lied about the evidence in charging documents and threatened to arrest his mother and testify against him if he did not accept a plea deal. (<u>Id.</u> ¶¶ 27–28, 37). Lastly, the court vacated his conviction and entered a disposition of nolle prosequi on all charges. (<u>Id.</u> at 1).

These facts establish that Individual Defendants instituted, or helped to maintain,[6] a criminal proceeding against Brown without probable cause. The Court can infer malice from the lack of probable cause, <u>Talley</u>, 2021 WL 4244759 at *12, and the vacated judgment and nolle prosequi disposition of the charges represents a termination in his favor, <u>see</u> <u>Litchfield v. Rinehart</u>, No. GLR-21-2101, 2022 WL 3716525, at *7 (D.Md. Aug. 29, 2022) (citing <u>Hines v. French</u>, 852 A.2d 1047, 1057 (Md.Ct.Spec.App. 2004) ("A nol pros acts as a dismissal and, thus, the prosecution of appellant . . . ended in her favor.")).

---

[6] Notably, officers may be liable for malicious prosecution even when they do not directly seek an indictment or complete the warrant application. For example, "officers may be liable when they have lied to or misled the prosecutor" or "failed to disclose exculpatory evidence to the prosecutor." <u>Evans</u>, 703 F.3d at 647–48 (citing cases). Here, Brown has alleged that all Individual Officers knew that the drugs and guns were planted in his home and failed to report the unlawful conduct, (Am. Compl. ¶ 38), and thus they knew of exculpatory evidence and failed to disclose it.

In an effort to avoid this result, Individual Defendants argue that Brown has not shown that they instituted a criminal proceeding against him without probable cause. (Officer Defs.' Mem. L. Supp. Mot. Dismiss ["Officer Defs.' Mot."] at 1–14, ECF No. 42-1); (Mem. L. Supp. Hankard's Mot. Dismiss ["Hankard's Mot."] at 10–11, ECF No. 47-1). Specifically, they contend that, under Franks v. Delaware, 438 U.S. 154 (1978), Brown has failed to plead facts challenging the veracity of statements in the warrant application. (Id.).

Franks is a criminal case in which the Supreme Court held that a defendant has a right to a hearing when he makes a substantial preliminary showing that the warrant affiant intentionally, or with reckless disregard to the truth, made a materially false statement in the warrant application. Franks, 438 U.S. at 171. The Fourth Circuit has since applied this standard to § 1983 malicious prosecution and Fourth Amendment claims and held that a plaintiff seeking to establish such a claim based on alleged false statements in a warrant must show: (1) defendants knowingly and intentionally, or with a reckless disregard for the truth, either made false statements or omitted facts in the warrant application, and (2) those statements or omissions were material to a neutral magistrate's authorization of the search or seizure. Evans, 703 F.3d at 650.

As the Court explained above, Brown has alleged malicious prosecution through the Individual Officer's knowledge of the planted evidence and their failure to report it, so Brown need not also challenge the veracity of the warrant application under Franks to state his claim. See id. at 647–48 (officers may be liable for malicious prosecution even when they did not participate in the warrant application process. They may be liable for, inter alia, failing to disclose exculpatory evidence to the prosecutor). Nevertheless, the Court

finds that Brown has met the two-prong <u>Franks</u> test, although his Amended Complaint is not artfully pled in this regard. Brown says that Individual Defendants purposely planted drugs and guns in his home, lied about it in charging documents, and that he was arrested on a warrant and charged with firearm and narcotic crimes. (Am. Compl. ¶¶ 23, 26, 37, 39). It therefore follows that they knowingly made false statements in the warrant application process, and that those lies were material to the magistrate's authorization of the arrest.

Accordingly, Officer Defendants and Hankard's Motions to Dismiss will be denied to the extent they seek dismissal of the § 1983 malicious prosecution claim in Count I.

### 2.      Counts III and IV—State Law Malicious Prosecution Claims

In Counts III and IV, Brown claims that all Defendants maliciously prosecuted him under Articles 24 and 26 of the Maryland Declaration of Rights and Maryland's common law. (Am. Compl. ¶¶ 128–148). Defendants argue that these claims must be dismissed for failure to comply with the notice provision of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1). (<u>See, e.g.</u>, Mem. L. Supp. City Defs.' Mot. Dismiss ["City Defs.' Mot."] at 12, ECF No. 41-1). The Court agrees with Defendants.

The LGTCA contains procedural prerequisites to bring suit against a local government or its employees. <u>Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n</u>, 109 A.3d 639, 649 (Md. 2015). It applies to all Maryland constitutional and common law tort claims, <u>Johnson v. Balt. Police Dep't</u>, 452 F.Supp.3d 283, 315 (D.Md. 2020), and it provides that "an action for unliquidated damages may not be brought against a local

government or its employees unless the notice of the claim required by this section is given within 1 year after the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b)(1). A court may entertain a suit absent notice "upon motion and for good cause shown," unless the defendant can demonstrate prejudice. Id. § 5-304(d).

Here, in order to bring suit against Defendants, Brown needed to provide notice by mail to Baltimore's City Solicitor within one year of March 10, 2020—the day Brown's conviction was vacated. See id. § 5-304(c). Brown does not allege that he provided notice to the City Solicitor, but he argues that Baltimore City nevertheless had constructive notice of the suit because the State's Attorney for Baltimore City filed the motion to vacate judgment in Brown's criminal case. (Opp'n City Defs.' Mot. at 11, ECF No. 48).

First, the State's Attorney is a state official, not a local government employee, so the State's Attorney's knowledge cannot be imputed to Baltimore City. See Md. Code, Gen. Provisions § 5-101(11)(5) ("'State official' means . . . a State's Attorney[.]"). Second, even if the State's Attorney was a Baltimore City official, knowledge of the dismissal of Brown's charges is not notice that Brown would file a state law tort action for nonliquidated damages against Baltimore City, BPD, and Individual Defendants. Accordingly, the Court finds that Brown did not comply with the LGTCA's notice provision.

Next, Brown argues that there is good cause to excuse any lack of notice. (Opp'n City Defs.' Mot. at 12). He contends, citing Johnson, that good cause exists because of Individual Defendants' conduct in falsifying charging documents and coercing Brown to plead guilty. (Id. at 12–13). The Court disagrees.

Good cause exists if "the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." Johnson, 452 F.Supp.3d at 316–17. If a plaintiff establishes good cause, the burden shifts to the defendant to demonstrate prejudice. Id. at 317. The Court finds that good cause does not exist here because Brown made no effort to prosecute this case or provide notice until he filed this lawsuit. See Wilson v. Gaff, No. RDB-19-2587, 2021 WL 927382, at *4 (D.Md. Mar. 11, 2021) (finding no good cause where the plaintiff made no effort to put the City Solicitor on notice).

Further, Brown does not allege that Defendants or a third-party misled him to believe that he had provided notice. See Rios v. Montgomery Cnty., 872 A.2d 1, 1 (Md. 2005) (noting that good cause can exist "where representations made by local government representatives [regarding service] are misleading"); Moore v. Norouzi, 807 A.2d 632 (Md. 2002) (finding that an entity's misrepresentations that it was the third-party claims administrator for Montgomery County led the plaintiff to reasonably believe that serving notice of his claim on that that entity was serving the county). This case also differs from Johnson, where BPD officers concealed their wrongdoing such that a reasonable plaintiff would not have discovered the facts giving rise to his state law claims within the year-long notice period. See 452 F.Supp.3d at 317. Here, Brown immediately knew that the drugs and guns found in his home did not belong to him, and that Individual Defendants had planted the evidence and caused him to be charged with a crime he did not commit. Consequently, Brown has failed to demonstrate good cause for the lack of notice under the LGTCA and Counts III and IV will be dismissed.

13

### 3.   Count V—Negligent Training, Supervision, and Retention

In Count V, Brown claims that City Defendants failed to train officers to "conduct their law enforcement activities within constitutional and common law prohibitions against malicious prosecution." (Am. Compl. ¶¶ 150–53). City Defendants argue that: (1) Baltimore City is a state entity and cannot be held liable for BPD's or its officers' actions; (2) BPD is entitled to sovereign immunity; and (3) Brown has failed to state a claim against Palmere. (City Defs.' Mot. at 14–15, 30). The Court will address each argument in turn.

First, it is well-settled that "Baltimore police officers are state employees free from the City's supervision and control." Grim v. Balt. Police Dep't, No. ELH-18-3864, 2019 WL 5865561, at *27 (D.Md. Nov. 8, 2019) (quoting Est. of Anderson v. Strohman, 6 F.Supp.3d 639, 644 (D.Md. 2014)). Therefore, the Court will dismiss the negligent training claim against Baltimore City because BPD is a state agency and Baltimore City cannot be liable for BPD's or its officers' tortious conduct. See Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) ("Municipal liability is limited to action for which the municipality is actually responsible."); Chin v. City of Balt., 241 F.Supp.2d 546, 549 (D.Md. 2003) ("[A]s a matter of Maryland law, the Baltimore City government does not wield enough control over the Baltimore Police Department to be subject to liability for the Baltimore Police Department's actions.").

Second, it is equally clear that BPD is entitled to sovereign immunity from state common law torts and state constitutional torts. Litchfield, 2022 WL 3716525, at *8; Burley v. Balt. Police Dep't, 422 F.Supp.3d 986, 1026 (D.Md. 2019) (BPD "enjoys

sovereign immunity from actions for damages based on state common law torts or state constitutional torts."). Thus, Count V fails to state a claim against BPD.[7]

Third, the Court finds that Brown has stated a claim for negligent training, supervision, or retention against Palmere. To establish such a claim, Brown must show that:

> (1) [his] injury was caused by the tortious conduct of an employee; (2) that the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type; (3) that the employer failed to use proper care in selecting, supervising, or retaining that employee; (4) and that the employer's breach of its duty was the proximate cause of [Brown's] injuries.

Doe v. Cmty. Coll. of Balt. Cnty., 595 F.Supp.3d 392, 419 (D.Md. 2022) (cleaned up).

As to the first and second elements, Brown alleges that BPD employees maliciously prosecuted him, and that Palmere and BPD leadership were aware of their conduct. (See Am. Compl. ¶¶ 130, 136). Specifically, Palmere knew or should have known that Individual Defendants posed a threat to the public because he: "encouraged policies and procedures and promoted the departmental culture which permitted the misconduct at issue," (id. ¶ 136), and has been accused of "approving and facilitating such misconduct" and "coaching officers on how to avoid legal repercussions," (id. ¶ 170). Regarding the third element, Brown says that Palmere failed to properly supervise BPD officers and that

---

[7] As this Court explained in Litchfield, BPD may later be subject to indemnification if Brown succeeds in his claims against Individual Defendants. 2022 WL 3716525, at *8 n.5. "Regardless, [the negligent training] claim against BPD must be dismissed." Id.

he condoned their conduct. (Id. ¶ 151). Lastly, Palmere's failure to supervise officers was the proximate cause of Brown's injuries. (Id. ¶¶ 151–52).

In sum, Brown has sufficiently stated a claim for negligent training, supervision, and retention, and City Defendants' Motion to Dismiss will be denied as to Count V against Palmere.

### 4.   Counts VI, VII, and VIII— <u>Monell</u> and <u>Longtin</u> Claims

In Counts VI, VII, and VIII Brown makes <u>Monell</u> and <u>Longtin</u> claims against Baltimore City for an alleged pattern or practice of malicious prosecution at BPD. (Am. Compl. ¶¶ 155–56). <u>Longtin</u> is the Maryland State law analogue to a federal <u>Monell</u> claim, and thus the Court will analyze these claims simultaneously. <u>See</u> <u>Palma v. Montgomery Cnty.</u>, 598 F.Supp.3d 288, 297 n.5 (D.Md. 2022) (explaining that the Court need not "undertake an independent analysis" of the <u>Longtin</u> claims because they are identical to the <u>Monell</u> claim).

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities may be liable for a plaintiff's constitutional harms under § 1983. There are three necessary elements for <u>Monell</u> liability. First, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 229 (4th Cir. 1984) (quoting <u>Monell</u>, 436 U.S. at 694); <u>see also</u> <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1389 (4th Cir. 1987). As interpreted by the Fourth Circuit, a "policy or custom" can exist in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (cleaned up). Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the municipality. Spell, 824 F.2d at 1389; see also Owens v. Balt. City State's Attorney's Off., 767 F.3d 379, 402 (4th Cir. 2014) ("[A] municipality is liable only for its own illegal acts . . . Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the sine qua non of Monell liability."). In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation." Spell, 824 F.2d at 1387 (4th Cir. 1987) (internal citations omitted). Third and finally, the plaintiff must allege an affirmative causal link between the "policy or custom," and the particular injury suffered by the plaintiff. Id. at 1389.

Here, Brown fails to allege facts showing that the alleged policy of malicious prosecution is fairly attributable to Baltimore City. As the Court explained above, BPD officers, as state employees, are free from Baltimore City's supervision and control. Grim, 2019 WL 5865561, at *27; Young v. City of Balt., No. GLR-16-1321, 2017 WL 713860, at *2 (D.Md. Feb. 23, 2017) ("Baltimore [City], as a matter of law, is not permitted to regulate or supervise the Baltimore Police Department."); Est. of Anderson, 6 F.Supp.3d at 646 ("[Baltimore] City sets no policy or custom that Baltimore police officers execute,

and the City cannot be liable for the conduct of [BPD officers] under § 1983."). This is because Article II, section 27 of the Baltimore City Charter explicitly provides that "no ordinance of the City or act of any municipal officer shall conflict, impede, obstruct, hinder or interfere with the powers of the Police Commissioner."

An exception to the general rule that Baltimore City is not liable for § 1983 claims exists when the plaintiff can show that Baltimore City had final policymaking authority and "jointly formulated" the policy at issue in a Monell claim. See Lucero v. Early, No. GLR-13-1036, 2019 WL 4673448, at *8 (D.Md. Sept. 25, 2019) (denying the motion to dismiss as to the Monell claim against Baltimore City because plaintiff plead facts showing that both Baltimore City and BPD developed and implemented the policy); Washington v. Baltimore Police Dep't, 457 F.Supp.3d 520, 538 (D.Md. 2020) (summarizing the case law regarding Baltimore City's liability under Monell, and concluding that the plaintiff failed to state such a claim because he did not establish Baltimore City as a joint policymaker with the police commissioner).

Here, Brown has failed to plead any facts establishing Baltimore City as a joint policymaker of BPD's alleged malicious prosecution policy. The Fourth Circuit has cautioned that courts "must never 'assum[e] that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'" Hunter v. Town of Mocksville, 897 F.3d 538, 555 (4th Cir. 2018) (quoting St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988)). The Court will make no such assumption here, where Brown has not pled any facts to disturb the established principle that BPD is a state agency over which

Baltimore City has no control. Accordingly, the <u>Monell</u> and <u>Longtin</u> claims will be dismissed.

Ordinarily, the Court would determine whether Brown has stated a <u>Monell</u> claim against BPD. Baltimore City is the sole Defendant official named in Counts VI, VII, and VIII, but Brown mentions BPD in many of the allegations related to those claims. (<u>See, e.g.</u>, Am. Compl. ¶ 156 ("Baltimore City and BPD have instituted . . . policies[] and practices that foster, promote and encourage officers to arrest without probable cause.")). Consequently, City Defendants argued that Brown failed to state a claim against both BPD and Baltimore City in their Motion to Dismiss. (City Defs.' Mot. at 16–24). Brown did not respond to the arguments regarding BPD, and thus he has abandoned any <u>Monell</u> or <u>Lontin</u> claims against it. <u>See Ferdinand-Davenport v. Children's Guild</u>, 742 F.Supp.2d 772, 777 (D.Md. 2010) (plaintiff abandoned her claim when she failed to respond to the defendant's argument in the motion to dismiss). Brown also did not request leave to amend the Amended Complaint. Accordingly, the Court will not determine whether Brown has stated a <u>Monell</u> claim against BPD, and Counts VI, VII, and VIII will be dismissed.

**5.    Count IX—§ 1985 Conspiracy**

In Count IX, Brown alleges that all Defendants "conspired to deter [him], by force, intimidation, or threat, from testifying freely [] regarding his knowledge of the ownership of the firearm and narcotics." (Am. Compl. ¶ 188). Thus, they obstructed justice with intent to deny Brown equal protection under the law.[8] (<u>Id.</u>). Further, the Individual Defendants

---

[8] Section 1985 has three subsections, each of which provides different grounds for bringing a conspiracy claim. Section 1985(2) prohibits "obstructing justice" by, inter alia,

committed acts in furtherance of the conspiracy, such as planting evidence, coercion, and the willingness to offer false testimony. (Id. ¶ 189). Brown claims that this conduct constitutes a conspiracy under § 1985, and that the conspiracy caused damage to him. (Id. ¶ 190). Defendants argue that the conspiracy claim should be dismissed because: (1) Brown fails to allege a meeting of the minds; (2) Brown fails to establish discriminatory animus; and (3) the claim is barred by the intra-corporate conspiracy doctrine. (City Defs.' Mot. at 32–34; Officer Defs.' Mot at 25; Hankard's Mot. at 5). At bottom, the Court agrees with Defendants.

In order to state a conspiracy claim under 42 U.S.C. § 1985(3), which creates a private cause of action against "two or more persons . . . [who] conspire . . . for the purposes of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3), a plaintiff must prove the following:

> (1) A conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

A Society Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011). Plaintiffs must also show "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). The standard

---

intimidation of any party or witness "in any court of the United States." To the extent that Brown attempts to state a claim under § 1985(2), that claim must fail because Brown was charged only in state court.

for establishing a § 1985 conspiracy is "relatively stringent," and the Fourth Circuit "has rarely, if ever found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a motion for summary judgment." Id.

The Court is mindful that to survive a motion to dismiss, Brown must only allege a plausible claim and allow the Court to "draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Nevertheless, the Court finds that Brown has failed to meet this standard. First, his allegations that Defendants conspired are conclusory because the Amended Complaint is devoid of any facts showing an agreement or a meeting of the minds. Brown argues that a meeting of the minds was "plainly evident through the circumstances of this case as well as other incidents involving the GTTF team," (Opp'n BPD's Mot. at 35–36), but there are no facts showing that each Defendant agreed and conspired in advance to plant evidence and intimidate Brown.

Second, Brown has also failed to establish the second element of his claim—that Defendants "were each 'motivated by a specific class-based, invidiously discriminatory animus.'" See Facey v. Dae Sung Corp., 992 F.Supp.2d 536, 541 (D.Md. 2014) (quoting A Society Without a Name, 655 F.3d at 346)). In the Amended Complaint, Brown cites the DOJ Report, which concluded that BPD engaged in "enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches and arrests of African Americans." (Am. Compl. ¶ 63). Brown further explained that:

> [R]acial disparities in BPD's arrests are most pronounced for highly discretionary offenses: African Americans accounted for 91 percent of the 1,800 people charged solely with "failure to obey" or "trespassing"; 89 percent of the 1,350 charges for

> making a false statement to an officer; and 84 percent of the
> 6,500 people arrested for 'disorderly conduct.

(Id. ¶ 64). Lastly, Commissioner Michael Harrison admitted that BPD's policing resulted in disparate treatment, and that BPD's previous training and instruction did not address race at all. (Id. ¶ 103).

It is clear from these allegations that BPD's policing resulted in racial disparities in arrests, but Brown does not allege that each Defendant in the instant case was motivated by race-based discrimination against him. Indeed, the Amended Complaint does not even identify Brown's race, so there are no facts supporting his membership in a protected class. Accordingly, the § 1985 conspiracy claim must be dismissed.

The Court notes that the conspiracy claim is also barred by the intracorporate conspiracy doctrine. Under the intracorporate conspiracy doctrine, "acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). This Court has consistently found that the intracorporate conspiracy doctrine extends to government entities, including BPD. Kangalee v. Balt. City Police Dep't, No. RDB-12-01566, 2012 WL 5457231, at *7 (D.Md. Nov. 7, 2012). Therefore, because Individual Defendants were all BPD employees at the time of Brown's prosecution, their actions cannot form the basis for the conspiracy claim, unless an exception to the intracorporate conspiracy doctrine applies.

There are two exceptions: first, the doctrine is "generally inapplicable 'where a coconspirator possesses a personal stake independent of his relationship to the

corporation.'" <u>Painter's Mill Grille, LLC v. Brown</u>, 716 F.3d 342, 353 (4th Cir. 2013) (quoting <u>ePlus Tech.</u>, 313 F.3d at 179). Second, "a plaintiff may state a conspiracy claim where the agent's acts were not authorized by the corporation." <u>Id.</u>

Here, neither exception applies. In <u>Painter's Mill Grille, LLC</u>, the Fourth Circuit found that neither exception applied in a case where the plaintiff alleged that "the individual defendants were acting at all times as 'agent[s], servant[s] and/or employees[s]' of the corporate defendants and that the corporate defendants [were] therefore vicariously liable." <u>Id.</u> at 353. Here, Brown is likewise asserting a theory of vicarious liability for BPD and Baltimore City based on the conduct of BPD employees. (<u>See</u> Am. Compl. ¶ 51 (alleging that Individual Defendants "acted within the scope of their employment" at all times)). Further, Brown has not alleged that any individual "possess[ed] a personal stake independent of [their] relationship to their employer." <u>See</u> <u>ePlus Tech.</u>, 313 F.3d at 179. To the contrary, Brown alleges that Individual Defendants acted within the scope of their employment, (Am. Compl. ¶ 51), and that Baltimore City and BPD "not only condoned, but encouraged, rewarded, and protected" them for their conduct, (<u>id.</u> ¶ 57). Therefore, the Court finds that the intracorporate conspiracy doctrine applies and that, as a result, Brown cannot claim that Individual Defendants and BPD conspired to deprive him of his rights under § 1985.[9] Count IX will be dismissed.

---

[9] The Court notes that Baltimore City is not a BPD employee, and thus the intracorporate conspiracy doctrine would not bar the conspiracy claim against it. However, the doctrine does bar the claim against all other Defendants as explained above, and a conspiracy claim cannot stand against a single party. <u>See</u> <u>A Society Without a Name</u>, 655 F.3d at 346 (explaining that a conspiracy is between "two or more persons."). Accordingly, Count IX must be dismissed.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss (ECF Nos. 41, 42, 47) in part and deny them in part. City Defendants' Motion (ECF No. 41) is granted as to Counts III, IV, VI, VII, VIII, and IX. The Motion is granted as to Count V in part against Defendants Baltimore City and BPD only. Officer Defendants' Motion (ECF No. 42) is granted as to Counts II, III, IV, and IX. Hankard's Motion (ECF No. 47) is granted as to Counts II, III, IV, and IX. The Motions are otherwise denied. Brown's surviving claims are Count I against Officer Defendants, Hankard, and Palmere, and Count V against Palmere. Baltimore City and BPD are dismissed as Defendants in this action. Individual Defendants shall answer the Amended Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows. Entered this 16th day of May, 2024.

_____/s/_____
George L. Russell, III
United States District Judge