IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| TIMOTHY BROWN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No.:  1:23-cv-00155-GLR |
| MAYOR AND CITY COUNCIL OF | * | |
| BALTIMORE CITY, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OF LAW IN SUPPORT OF OFFICER DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

## EXHIBIT INDEX

| Exhibit No. | Description |
| --- | --- |
| 1 | Application for Search Warrant |
| 2 | Application for Statement of Charges |
| 3 | Deposition of Antonio Saunders |
| 4 | Deposition of Keith Gladstone |
| 5 | Deposition of Kenneth Patzman |
| 6 | Statement of Charges |
| 7 | Arrest Incident Report |
| 8 | Deposition of Timothy Brown |
| 9 | Indictment |
| 10 | Plea Agreement Transcript |
| 11 | Motion for Court Ordered Evaluation |
| 12 | State's Amended Motion to Vacate Judgment |
| 13 | Deposition of Robert Hankard |
| 14 | Officer Patzman's Answer to Interrogatories |
| 15 | Deposition of Avraham Tasher |
| 16 | Deposition of Michael O'Sullivan |
| 17 | Deposition of Dennis Cunningham |
| 18 | Deposition of Zina Cunningham |
| 19 | Deposition of Trevor Epperson |
| 20 | Plaintiff's Supplemental Answers to Gladstone's Interrogatories |
| 21 | Affidavit of Keith Gladstone |
| 22 | Affidavit of Antonio Saunders |
| 23 | Affidavit of Kenneth Patzman |
| 24 | Affidavit of Michael O'Sullivan |
| 25 | Affidavit of Avraham Tasher |
| 26 | Affidavit of Robert Hankard |

4899-2526-8820, v. 1

## I. INTRODUCTION

On June 9, 2023, Plaintiff Timothy Brown ("Plaintiff") filed an Amended Complaint ("AC") against, *inter alia*, the Officer Defendants. After this Court partially granted motions to dismiss (*see* ECF No. 66) the only surviving claim against the Officer Defendants is a claim for malicious prosecution under the Fourth Amendment (Count I). Under Count I, Plaintiff alleges the Officer Defendants planted a firearm, ammunition, paraphernalia, and drugs in his residence. The Officer Defendants are entitled to summary judgment on Count I because Plaintiff has produced *zero* admissible evidence to generate a *genuine* dispute of material fact that the Officer Defendants planted anything at Plaintiff's residence. In the absence of such evidence, the undisputed material facts reveal that the Officer Defendants had probable cause to arrest and charge Plaintiff as a matter of law. Count I, therefore, fails because Plaintiff cannot prove two necessary elements of a malicious prosecution claim – lack of probable cause and improper motive – and the Officer Defendants are, accordingly, entitled to judgment as a matter of law.

## II. STATEMENT OF UNDISPUTED FACTS

### A. The Search And Seizure Warrant

On February 11, 2014, Defendant Detective Robert Hankard[1] ("Det. Hankard") submitted an Application for Search and Seizure Warrant to the District Court of Maryland for Baltimore City to search a residence located at 2811 Ruscombe Lane, Baltimore, Maryland 21215 (the "Residence"), based on suspected drug activity. Exhibit 1, Application for Search Warrant. Therein, Det. Hankard asserted there was probable cause to believe that Plaintiff and others were participating in a conspiracy to distribute controlled dangerous substances; that the Residence was

---

[1] The use of police rank designation reflects the rank of the Officer Defendant at the time of the incident at issue in this matter.

used for the storage and distribution of narcotics, narcotics proceeds, and the facilitation of narcotics offenses; and that items which constitute evidence, fruits, and instrumentalities of violations of the controlled substances laws would be found at the Residence. *Id.* at 9.

Det. Hankard affirmed there was probable cause to search the Residence based partly on information from a Confidential Informant ("CI"). *Id.* at 5. That CI stated an individual known as "SQ," whose real name was Timothy and who drove an early model maroon Mercury Cougar (the "Vehicle"), sold marijuana and MDMA from his house. *Id.* The CI also provided Det. Hankard with SQ/Timothy's phone number. Det. Hankard, using the Thompson Reuters Consolidated Lead Evaluation and Reporting Database, determined the phone number belonged to Plaintiff, and that Plaintiff resided at the Residence. *Id.* at 6.

Det. Hankard also conducted a criminal record inquiry, Maryland Vehicle Administration ("MVA") search, Maryland Real Property search, and Baltimore Police Arrest Viewer search. *Id.* at 7. The criminal record inquiry revealed that Plaintiff – who at times went by Trevor Epperson, SQ, and Timothy – had eight convictions between 2002 and 2013 for possession of drugs, assault, violation of parole, and resisting arrest. *Id.* at 6. The MVA search confirmed that Plaintiff resided at the Residence, and that Plaintiff's mother, Zina Cunningham ("Mrs. Cunningham"), owned the Vehicle. *Id.* at 7. The Maryland Real Property search revealed that Mrs. Cunningham owned the Residence. *Id.* The Baltimore Police Arrest Viewer search revealed that, on July 25, 2013, Plaintiff was arrested while operating the Vehicle, and thirteen Ziploc bags of suspected marijuana were recovered. *Id.*

Det. Hankard also surveilled the Residence. During his surveillance, he observed the Vehicle parked near the Residence. *Id.* Det. Hankard also observed conduct he concluded was indicative of controlled dangerous substance activities and sales. Specifically, he observed the

2

same car approaching the Residence three separate times over the span of an hour. An occupant

of that vehicle eventually entered the Residence for 30 seconds and left. *Id.* at 8. Det. Hankard

also searched trash located on the public street outside of the Residence and found nine Ziploc

bags and two vials with suspected marijuana residue. *Id.*

On February 11, 2014, the Honorable L. Robert Cooper issued a Search and Seizure

Warrant ("the "Search Warrant") permitting officers to search the Residence. *Id*. at 1-2.

### B. Execution Of The Search Warrant

Detectives Hankard, Avraham Tasher ("Det. Tasher"), Antonio Saunders ("Det.

Saunders"), Michael O'Sullivan ("Det. O'Sullivan"), Derrick Brown ("Det. Brown"), and Sergeant

Keith Gladstone ("Sgt. Gladstone") executed the Search Warrant on February 12, 2014. Exhibit

2, Application for Statement of Charges, at 1. Det. Hankard was responsible for covering the

exterior side of the Residence, acting as scribe, and taking pre-search pictures. *Id.* at 2. Det.

Tasher was responsible for covering the exterior rear of the Residence and taking post-search

pictures of the Residence. *Id.* Det. Saunders was the bunker[2] and participated in the search inside

the Residence. *Id.* Det. O'Sullivan operated the door ram and participated in the search inside the

Residence. *Id.* Det. Brown was responsible for hands[3] and conducting the search inside the

Residence. *Id.* Sgt. Gladstone supervised the search, was also responsible for hands, and was the

knocking Det.[4] *Id.* Finally, Officer Kenneth Patzman ("Officer Patzman") was responsible for

---

[2] While executing a search warrant, the bunker is responsible for holding the shield to defend the executing officers/detectives from gunfire by potential suspects and other individuals in the property being entered. *See* Exhibit 3, Deposition of Antonio Saunders at 55:3–18.

[3] While executing a search warrant, an officer assigned "hands" is responsible for placing any individuals on the scene in handcuffs while the search is conducted. *See* Exhibit 4, Deposition of Keith Gladstone, at 72:5–8.

[4] While executing a search warrant, the knocking detective knocks on the door of the premises and announces the police presence. *See* Ex. 4 at 72:9–19.

3

scanning the Vehicle, which was parked outside of the Residence, with a K9. *Id.* Officer Patzman was not present when the Search Warrant was executed. He arrived on scene later.

The Search Warrant was executed at 9:00 a.m. *Id.* at 5. Sgt. Gladstone knocked on the door and announced "police search warrant" while the Officer Defendants were standing on the front porch of the Residence. *Id.* After doing so for 45 seconds without response, Det. O'Sullivan utilized the door ram and gained entry into the Residence. *Id.* at 6. Upon entry, the Officer Defendants noticed an "overwhelming odor of unburned marijuana throughout the residence." *Id.* The Officer Defendants (other than Officer Patzman) first scanned the Residence for safety. *Id.* Then, once it was determined that no one was present, the Residence was photographed and searched. *Id.*

During the search, evidence consistent with suspected drug activity was recovered from the following locations in the Residence:

- the basement - an unloaded, sawed-off Mossberg 500 shotgun with an illegible serial number;

- the "right side medium size bedroom," later identified as Plaintiff's bedroom:

    - mail, court papers, and paperwork in Plaintiff's name in the television stand;

    - three mannite bars and clear sandwich bags containing loose black rock substances suspected to be heroin in the nightstand's top drawer;

    - a red digital scale and new and unused plastic bags in the nightstand's bottom drawer;

    - a spoon with suspected heroin residue, a sifter with suspected heroin residue, a clear bag containing 66 grams of white powder suspected to be mannite, unused gelatin capsules, and two clear sandwich bags with white powder residue in a plastic box located in the closet;

    - a clear bag with thirteen live 12-gauge shotgun rounds on the closet floor; and

4

- two clear sandwich bags with more than ten clear sandwich bags containing suspected marijuana in the right pocket of a tan coat hanging on top of Plaintiff's closet door;

- the master bedroom, later identified as Mrs. Cunningham's bedroom - a spare key to the Vehicle in the main dresser drawer;

- the middle smaller bedroom, later identified as Plaintiff's brother, Trevor Epperson's ("Mr. Epperson") bedroom - a glass jug containing suspected marijuana in the pocket of a jacket;

- the kitchen - one live, 12-gauge shotgun ammunition in the utility drawer and four clear sandwich bags containing suspected marijuana in the utensil drawer; and

- within the living room - twenty-six gelatin tablets containing suspected heroin in a China cabinet

*Id.* at 3-5.

During the search, a K9 unit was requested to conduct an exterior scan of the Vehicle that was parked alongside the Residence. *Id.* at 6. Officer Patzman responded with his K9 and conducted the scan. *See id.* The K9 made a positive indication for narcotics near the passenger side door. *Id.*; *see* Exhibit 5, Deposition of Kenneth Patzman at 20:17–21, 21:1–9. Officer Patzman then left the area. Ex. 5 at 21:2-9.

Mrs. Cunningham arrived at the Residence at 9:42 a.m., nearly 45 minutes after the search at had begun. Ex. 2 at 6. Mrs. Cunningham stated that she was the homeowner. She was placed in custody for the duration of the search. *Id.* Det. Hankard informed Mrs. Cunningham of her *Miranda* rights, and she affirmed that she understood them. *Id.* Det. Hankard asked Mrs. Cunningham questions on the scene regarding the occupants of the Residence and Plaintiff's whereabouts. *Id.* at 7-8. Mrs. Cunningham also told Det. Hankard where the Vehicle's keys were located. Det. Hankard recovered the keys and searched the Vehicle. *See id*. at 7. The Vehicle's interior had an overwhelming smell of marijuana and Det. Hankard located a school identification card in Plaintiff's name in its center console. *Id.*

5

Once the search was completed, Mrs. Cunningham was transported to the Northern District for debriefing. *Id.* at 9. The evidence seized from the Residence was submitted to the Evidence Control Unit ("ECU") by Dets. Brown, Tasher, and O'Sullivan. *Id.*

### C. Plaintiff's Arrest And Conviction

On February 13, 2014, Det. Hankard filed an Application for Statement of Charges for Plaintiff on the basis of the controlled dangerous substances, paraphernalia, shotgun, and ammunition recovered from the Residence and, more specifically, from his bedroom. *See* Ex. 2 at 1. That same day, Plaintiff was criminally charged, and an arrest warrant was issued for his arrest. *See* Exhibit 6, Statement of Charges. On or about March 26, 2014, Plaintiff was arrested during a traffic stop. *See* Exhibit 7, Arrest Incident Report, at 2; Exhibit 8, Deposition of Timothy Brown at 78:5–21, 79:6.

On April 17, 2014, Plaintiff's original charges were superseded by a grand jury indictment, which charged Plaintiff with fifteen counts relating to conspiracy, possession of the firearm, and possession with the intent to distribute controlled substances. *See* Exhibit 9, Indictment. On August 28, 2014, Plaintiff pled guilty to two counts in the indictment: prohibited possession of a firearm after a felony conviction and possession with the intent to distribute heroin. *See generally* Exhibit 10, Plea Agreement Transcript. Plaintiff was represented by counsel during his plea hearing and throughout his criminal case. *See generally id.* During the plea agreement proceeding, Plaintiff was asked: "And you're pleading guilty because you are in fact guilty. Is that correct?" to which Plaintiff responded: "Yes." *Id.* at 20:8–10. Plaintiff was sentenced to nine years' incarceration. *Id.* at 25:14–25, 26:1–2.

The record in Plaintiff's criminal case contains a motion seeking court-ordered evaluation for drug dependency that was filed on or about May 28, 2015, while Plaintiff was incarcerated. *See* Exhibit 11, Motion for Court Ordered Evaluation. Therein, Plaintiff indicated he was a drug

4899-2526-8820, v. 1

user and, at the age of twenty-eight,[5] "he began possessing and distributing drugs in order to sustain this addiction." *Id.* at 2.

Plaintiff was released from incarceration in 2019. *See* AC at ¶ 33. On January 21, 2020, the State's Attorney for Baltimore City filed a motion to vacate Plaintiff's conviction based on the discovery of unrelated, alleged instances of misconduct by Sgt. Gladstone and Det. Hankard, and Plaintiff's conviction was subsequently vacated. *See* Exhibit 12, State's Amended Motion to Vacate Judgment.

## D. FACTS RELATED TO EACH OFFICER DEFENDANT[6]

Plaintiff has sued numerous current or former BPD personnel in the instant action. The following facts can be attributed to each Officer Defendant.

### i. Det. Hankard

Det. Hankard secured the Search Warrant. Ex. 1. On February 12, 2014, before the Search Warrant was executed, the Officer Defendants met at approximately 8:00 a.m. to discuss logistics of executing the Search Warrant and stayed together until the execution began. Exhibit 13, Deposition of Robert Hankard at 88:7-10. During execution of the Search Warrant, Det. Hankard was responsible for covering the exterior side of the Residence, acting as scribe, and taking pre-search pictures of the Residence. Ex. 2 at 2; Ex. 13 at 92:4-7. Det. Hankard did not see anyone plant drugs or guns in the Residence. Ex. 13 at 85:8-19 ("A: I don't remember the exact schematics of the house, but that was -- according to the paperwork, it was a lot of drugs. No, I would have to disagree with you. One officer would have saw another officer plant drugs in every single drawer, every single -- it's just -- it's impossible. Impossible. Q: Right. A: And then we had to take opening

---

[5] Plaintiff was born in 1982. *See* Ex. 7 at 2.

[6] Movants do not address Defendant Palmere's involvement. The extent of Defendant Palmere's involvement – or lack thereof – will be addressed separately.

photos and then closing photos of everything. Yeah, I'm not defending Keith Gladstone or any officer on the scene, but no one had planted drugs or guns in that house. Not enough time.").

### ii.    Officer Patzman

Officer Patzman was the K9 handler who responded to the Residence to scan the Vehicle which was parked alongside the Residence.  *See* Ex. 5 at 20:21-21:9 ("Q: Okay. Can you tell me what you recall from this incident? A: I recall being called to a scene to sniff a vehicle -- have my dog sniff a vehicle. I took him around the vehicle. He gave me a positive indication by sitting. The officer at the scene did not have means to open the vehicle, and I left the scene. And I was supposed to -- they'll notify me later if anything gets recovered from any vehicle.").  Officer Patzman did not participate in any search inside of the Residence and did not seize any items therefrom. *See* Exhibit 14, Officer Patzman's Answer to Interrogatories at p. 8 (Answer No. 8).  Officer Patzman did not have any other involvement in the search, and he never entered the Residence. *See id;* Ex. 5 at 25:7–8 ("Q: Did you ever go into the house? A: No.").

### iii.    Det. Tasher

Det. Tasher was responsible for covering the exterior rear of the Residence while the Search Warrant was executed and took pictures of the Residence after the search occurred.  Ex. 2 at 2; Exhibit 15, Deposition of Avraham Tasher, at 60:3-20, 61:15-62:2 (recalling covering the Residence's rear during the search and taking pictures afterwards).  After execution of the Search Warrant, Det. Tasher submitted the packing material and miscellaneous items recovered from the Residence to ECU.  *See* Ex. 2 at 9.

### iv.    Sgt. Gladstone

Sgt. Gladstone supervised execution of the Search Warrant. Ex. 2 at 2.  He was also responsible for hands and knocking on the Residence door when the detectives executed the Search Warrant.  *Id.* Sgt. Gladstone's recollection of the search is based on the Search Warrant Execution

Information, Incident Report, Search Warrant Return, Application for Search and Seizure Warrant, and the Search and Seizure Warrant. *See* Ex. 4 at 56:19-57:2 ("Q Okay. All right. Other than simply reciting for me what you read in the documents, you would have no information and nothing to add about the execution of the search warrant; is that correct? A That's correct.").

### v. Det. O'Sullivan

Det. O'Sullivan was responsible for using the door ram on the Residence's front door and searching inside the Residence during execution of the Search Warrant. Ex. 2 at 2. After execution of the Search Warrant, Det. O'Sullivan submitted the firearm recovered from the Residence to ECU. Ex. 2 at 9. Det. O'Sullivan's recollection of the search is based on the Search Warrant Execution Information, Incident Report, Search Warrant Return, Application for Search and Seizure Warrant, and the Search and Seizure Warrant. *See* Exhibit 16, Deposition of Michael O'Sullivan, at 34:7–14 (" Q: So walk me through what you remember from the time that you arrived at the residence to the time that you left the residence. A: It was not much I remember. It was a raid. Q: Okay. A: I can't -- all I can -- the only thing that I can say is what I read in reports. Otherwise, I have no recollection of this raid.").

### vi. Det. Saunders

Det. Saunders was the bunker, *see supra* n.1, and conducted the search inside the Residence during execution of the Search Warrant. Ex. 2 at 2. Det. Saunders' recollection of the search is based on the Search Warrant Execution Information, Incident Report, Search Warrant Return, Application for Search and Seizure Warrant, and the Search and Seizure Warrant. *See* Ex. 3 at 62:11-63:1 ("Q: I'm going to ask a big general question, so walk me through what you did, what you saw, what you heard from the time that you got to the location for this raid until the time that you left. MR. MALICK: Objection to form. A: Ma'am, I do not recall. Q: You don't remember

anything? A: No, ma'am. Q: Do you recall participating in this raid at all? A: I cannot remember, ma'am.").

*    *    *

It is undisputed that Plaintiff does not know and has not had any interaction with any of the Officer Defendants. *See* Ex. 8. at 100:9-102:21, 111:11-112:10.

### E. FACTS ATTRIBUTABLE TO EACH OF PLAINTIFF'S FAMILY MEMBERS

Plaintiff and three of his family members – Mrs. Cunningham, Dennis Cunningham ("Mr. Cunningham"), and Mr. Epperson – were deposed in this case. The following facts can be attributed to Plaintiff and his relatives.

#### i. Plaintiff

Plaintiff had the nickname "Squints" and used the alias "Trevor Epperson." Ex. 8 at 10:19–21, 130:17–21, 131:1. On the morning of February 12, 2014, Plaintiff was not at the Residence. *See id.* at 65:8-21, 77:1-9. Plaintiff admitted to and was found guilty of unlawfully possessing the shotgun and narcotics recovered at the Residence on February 12, 2014. Ex. 10 at 8:3–9:3, 20:4-10, 24:15-21.

#### ii. Mr. Cunningham

Dennis Cunningham is Plaintiff's stepfather, married to Plaintiff's mother, Mrs. Cunningham, and resided at the Residence on and around February 12, 2014. *See* Exhibit 17, Deposition of Dennis Cunningham, at 20:15-19, 23:7-10. While living in the Residence, Mr. Cunningham did not search Mr. Epperson's or Plaintiff's bedrooms and, therefore, has no personal knowledge as to whether drugs were present in either room. *Id.* at 47:9-22. And, Mr. Cunningham was not present during any part of the search of the Residence; he was driving to North Carolina. *Id.*, 33:13–22.

### iii. Mrs. Cunningham

Mrs. Cunningham, resided at the Residence on and around February 12, 2014. Ex. 17 at 23:7-10. On the morning of February 12, 2014, Mrs. Cunningham left the Residence by 6:30 a.m. and did not return until after the Officer Defendants had recovered evidence from the Residence. Exhibit 18, Deposition of Zina Cunningham, at 38:17-39:8, 42:19-43:12, 45:3-18, 63:20-64:11; Ex. 2 at 6. Before the execution of the Search Warrant, Mrs. Cunningham did not search all of the areas in which evidence consistent with suspected drug activity was later seized. Ex. 18 at 59:2–20, 60:1–18. Mrs. Cunningham knew that in 2014 Plaintiff used marijuana and kept the substance on his person. *Id.* at 50:8–14, 18–19.

### iv. Mr. Epperson

Plaintiff's brother, Mr. Epperson, resided at the Residence on February 12, 2014. Exhibit 19, Deposition of Trevor Epperson, at 6:14-19, 22:12-16. On the morning of February 12, 2014, Mr. Epperson was not at the Residence; he was at school. *Id.* at 54:13–15 ("Q: I'd like to focus in on February 12, 2014. What did you do that day? A: I went to school."; *see also* Ex. 18 at 41:19-21 (noting everyone left the house by 6:30 a.m.). Mr. Epperson had no basis to believe that the items seized from the Residence were planted by any Officer Defendant. Ex. 19 at 94:13–22, 95:1–3 ("Q: Other than the feelings of the police you think were crooked, there's -- there's no other basis for you to say that a gun was planted during the search? MS. BOARDMAN: Objection but you can answer. A: On search, or who search? Q: During the search in February 2014 that we've been talking about? A: I -- I can't really tell you because I did -- like, when the police come in your house, they don't let you -- let you -- *I wasn't there. Nobody was there when they came first time.*") (emphasis added).

Prior to the execution of the Search Warrant, Mr. Epperson never searched the Residence or Plaintiff's room. *Id.* at 91:17-92:20 ("Q: Did you ever go in [Plaintiff's] closet? A: No. No. Q:

Not before the search. A: No, sir. Q: Okay. Did you ever search the house yourself before the police did? A: Huh? Q: Did you ever search the house yourself? A: No. So I never searched the house. Q: So back in -- back in February 2014, were there drugs in the house? A: I don't know, sir. I didn't -- I don't know. Q: How about a gun? Was there – was there a gun in the house anywhere? MS. BOARDMAN: Objection, but you – A: I don't know. I never searched the house. I didn't -- I couldn't tell you."). Mr. Epperson did not know whether there were drugs or a firearm inside the Residence in or about February 2014. *Id.*

## III. PROCEDURAL BACKGROUND

On January 20, 2023, Plaintiff filed a nine-count Complaint against the Mayor and City Council of Baltimore, Baltimore City Police Department, Dean Palmere (collectively the "BPD Defendants"), Officer Defendants, Det. Brown, and Carmine Vignola. *See* ECF No. 1. On June 9, 2023, Plaintiff filed an Amended Complaint against the same Defendants (excluding Carmine Vignola) asserting the following claims: malicious prosecution claims under 42 U.S.C. § 1983 against the Officer Defendants and Dean Palmere (Counts I–II); malicious prosecution claims under the Maryland Declaration of Rights and common law against all Defendants (Counts III–IV); negligent training, supervision, and retention resulting in malicious prosecution against BPD Defendants (Count V); *Monell* claims against Defendant Baltimore City and BPD (Counts VI–VII); a *Longtin* claim against Defendant Baltimore City (Count VIII); and conspiracy to interfere with civil rights under 42 U.S.C. § 1985 against all Defendants (Count IX).

The Defendants each filed separate motions to dismiss the various claims brought against them. *See* ECF Nos. 41–42, 47. The motions to dismiss were fully briefed. *See* ECF Nos. 48, 52, 59, 62–64. This Court issued a Memorandum Opinion addressing the motions to dismiss on May 16, 2024. *See* ECF No. 66 (later clarified by ECF No. 87). Following the Court's Order, Plaintiff's sole surviving claim is malicious prosecution under 42 U.S.C. § 1983 against Dean Palmere and

12

Officer Defendants.[7] Discovery on these Counts is now complete. *See* ECF Nos. 100-01. The Officer Defendants now move for summary judgment.

## IV.    LEGAL STANDARD

Summary judgment under Fed. R. Civ. P. 56(a) is appropriate "if the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Further, a mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson,* 477 U.S. at 252. Rule 56 mandates the entry of "summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Further, "a moving party who does not bear the burden of proof may be granted summary judgment if there is an absence of evidence to support the non-moving party's case." *Wright Sols., Inc. v. Wright*, No. CBD-12-178, 2013 WL 1702548, at *8 (D. Md. Apr. 18, 2013).

"Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact." *Brother Convenience Store, Inc. v. U.S. Dep't of Agriculture*, No. GLR-20-1346, 2021 WL 3911594, at *10 (D. Md. Sept. 1, 2021). The nonmovant "may not rest upon the mere allegations or denials of its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."

---

[7] The Court subsequently dismissed Det. Brown from the instant action due to lack of service. *See* ECF 79.

*Bennett v. Green*, No. JKB-15-3026, 2016 WL 2866859, at *1 (D. Md. May 16, 2016) (citation omitted); *Best v. Fed. Nat'l Mortgage Ass'n*, 450 F. Supp. 3d 606, 634 (D. Md. 2020) ("[M]ere assertions of fact in a brief without substantiation in the record are insufficient to raise a genuine dispute."); *see also Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) ("Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment."); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) ("Unsupported speculation is not sufficient to defeat a summary judgment motion.").

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985); *see also Hinkle v. City of Clarksburg*, 81 F.3d 416, 423 (4th Cir. 1996) (granting summary judgment when claim "was based upon a theory without proof" and relied upon "speculation and the piling of inferences."). Notably, a party's "self-serving opinion ... cannot, absent objective corroboration, defeat summary judgment." *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004). Although the evidence is viewed in the light most favorable to the non-moving party, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

In ruling on a motion for summary judgment, "the court does not make credibility determinations." *Sims v. Univ. of Maryland Med. Sys. Co.*, Civil No. CCB-19-295, 2022 WL 2275891, *19 n.22 (D. Md. Jun. 23, 2022) (citing *Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022)). Further, a nonmovant cannot raise a genuine issue of material fact by relying on impeachment evidence, which cannot properly be considered at the summary judgment stage. *See*

14

*Jacobsen v. Towers Perrin Forster & Crosby, Inc*., No. CIV.A.RDB-05-2983, 2008 WL 782477, at *8 (D. Md. Mar. 20, 2008); *see also Mountain Valley Pipeline, LLC v. 0.47 Acres of Land*, 853 Fed. Appx. 812, 815–16 (4th Cir. 2021) (citing *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir 1996)); *see also Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness[ ] credibility are *all* that a plaintiff relies on, and he has shown no independent facts— no proof—to support his claims, summary judgment in favor of the defendant is proper.").

## V.     ARGUMENT

Count I alleges a Fourth Amendment claim under § 1983 for malicious prosecution.  *See* ECF 1 at ¶¶ 93-102.  A § 1983 claim for malicious prosecution "is properly understood as a Fourth Amendment claim for unreasonable search and seizure which incorporates certain elements of the common law tort."  *Hupp v. Cook*, 931 F.3d 307, 323–24 (4th Cir. 2019).  To succeed on his malicious prosecution claim, Plaintiff must show that he was "seized … pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor,"  *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996), and "'malice, or a primary purpose in instituting the proceeding other than that of bringing an offender to justice,'"  *see Villeda v. Prince George's Cnty.*, 219 F. Supp. 2d 696, 702, (D. Md. 2002), *aff'd sub nom. Villeda v. Prince George's Cnty.*, 70 Fed. Appx. 720 (4th Cir. 2003) (quoting *Exxon Corp. v. Kelly*, 281 Md. 689, 693 (1978)).

### A.     The Officer Defendants Are Entitled To Summary Judgment On Count I Because Plaintiff Has Not Established A Lack Of Probable Cause.

To defeat summary judgment, Plaintiff must show the Officer Defendants initiated or continued a criminal proceeding against him without probable cause.  "Probable cause is not a high bar."  *State v. Johnson*, 458 Md. 518, 535 (2018).  It "exists if the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution,

in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 377 (D. Md. 2018) (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)); *see also Davis v. DiPino*, 121 Md. App. 28, 50-51 (1998) *rev'd on other grounds*, 354 Md. 18 (1999) (Probable cause means "facts and circumstances 'sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'").  To establish probable cause, "there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367-68 (4th Cir. 2002).  Conversely, to "prove an absence of probable cause, [the plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was violating the relevant law.  *Id.* at 368.  Plaintiff cannot establish a lack of probable cause on this record.

Plaintiff was charged with firearms and narcotics-related offenses.  *See* AC at ¶ 26.  There is no dispute that a shotgun and narcotics were recovered at the Residence.  *See id.* at ¶ 36.  There is, likewise, no dispute that Plaintiff resided at the Residence.  *See id.* at ¶ 18.  Count I alleges the Officer Defendants planted the narcotics and firearm at the Residence to frame Plaintiff and fabricate probable cause to charge and arrest Plaintiff.  *See* AC at p. 3.  The Officer Defendants are entitled to summary judgment because Plaintiff has not adduced *any* admissible evidence to support his contention that the Officer Defendants planted evidence.  Without that evidence, Plaintiff cannot demonstrate the essential element of a lack of probable cause, which is fatal to his claim.  *See Villeda*, 219 F. Supp. 2d at 702.

Plaintiff's *only* evidence in support of his claim that the Officer Defendants planted the gun and narcotics is his own self-serving testimony and the equally self-serving testimony of his family

4899-2526-8820, v. 1

members.   Specifically, Plaintiff testified that he "wasn't aware" of the presence of any shotgun

or narcotics at the Residence, and that his mother did not have any narcotics at the Residence.  *See*

Ex. 8 at 93:9-94:21.  Indeed, the sum total of Plaintiff's affirmative evidence to suggest that the

Officer Defendants planted a gun and narcotics is summarized as follows:

> Q.      Are you disputing that there was a shotgun in house?
>
> A.      I'm telling you I didn't know anything about nothing was in the house, until somebody in my papers state that they found gun and drugs.
>
> * * *
>
> Q.      So, you're just saying you didn't know they were there?
>
> * * *
>
> A.      I wasn't aware of nothing that was in the house, sir. You're sitting here asking me, "well, you didn't know that your mother" -- however, you flip it, twist it or whatever, I'm telling you, I didn't know there was no drugs in there. My mother didn't have no drugs in there. My mother was at work.
>
> * * *
>
> Q.      Are you claiming that something was planted in this case?
>
> A.       I know for a fact something was planted in there, because my mother don't break no law. I wasn't breaking no law.
>
> * * *
>
> Q.      Is there any other -- what else are you relying on, anything else to say that something was planted in this case?
>
> MR. HANSEL: Objection. But go ahead.
>
> A.      No.
>
> * * *
>
> Q.      What are you claiming was planted?
>
> A.      Whatever they retrieved out of that home, they planted in that house. I know for a fact, didn't put nothing in there. I know my mother didn't put nothing in there. They the only ones that was in that house.

17

*See id.* at 93:9-94:21, 127:19-128:12, 129:3-130:2.

Mrs. Cunningham testified that she opened a drawer where drugs were found "every day," and she therefore found it hard to believe that the Officer Defendants could have recovered anything there. Ex. 18 at 56:18-59:1. But, she also admitted that, in 2014, she knew that Plaintiff used marijuana and kept the substance on his person. *Id.* at 50:8–14, 18–19. And, she did not search her sons' rooms or other belongings. *Id.*, 59:2–20, 60:1–18.

Likewise, Mr. Cunningham testified that neither he nor his wife kept narcotics in the Residence, that he often had occasion to see certain locations within the Residence where the Officer Defendants recovered narcotics and the shotgun, and that he never saw any firearms or narcotics in those locations. Ex. 17 at 37:11-16; 79:5-80:22. But, similar to Mrs. Cunningham, Mr. Cunningham did not search Mr. Epperson's or Plaintiff's bedrooms to ensure that drugs or drug paraphernalia were not present. *Id.* at 47:9-22.

Finally, Mr. Epperson testified that "the stuff [the Officer Defendants] said was here probably wasn't here." Ex. 19 at 94:4-8. But, similar to the rest of Plaintiff's family, Mr. Epperson was not present during the search. *Id.* at 11:14-19. Further, he did not go into his brother's room or the cabinet in the dining room where evidence was recovered. *Id.* at 61:16-62:1. Additionally, he never actually searched the Residence to confirm there were no drugs or firearms, and he did not know whether there was a gun in the house. *Id.* at 91:17-92:20.

Viewing this evidence in the light most favorable to Plaintiff, he has not established that the Officer Defendants planted evidence at the Residence. He has, *at most*, offered evidence that he did not possess the gun and narcotics, and that his mother, brother, and step-father did not possess the gun and narcotics. He has not, however, offered any admissible *evidence* that the

18

*Officer Defendants* planted the gun and narcotics.[8]  In other words, even if it is true that Plaintiff and his family members did not possess the items recovered, that does not create a genuine dispute of material fact as to whether the Officer Defendants planted those items in the Residence.  Put differently, it is possible that neither Plaintiff, nor his family members, possessed the gun and narcotics, *and* that none of the Officer Defendants planted them; they could have been planted by some third party.

As Maryland's Appellate Court has analyzed this issue in an unreported decision, the possibility that an unidentified third party possessed the contraband or abandoned it must be considered along with the possibilities that the plaintiff possessed it or that the officers planted it, and, to create a genuine dispute of material fact in this situation, the plaintiff must "produce evidence to suggest (or at least to give rise to the reasonable inference) that one of these possibilities is more likely than the others." *Brown v. Taylor*, No. 3101, Sept. Term, 2018, 2020 WL 2318039 at *2 (Md. Ct. Spec. App. May 11, 2020). Simply producing evidence suggesting (or at least contending) that the plaintiff did not possess the gun is not proof that police planted the gun. *Id.* In *Rich v. Hersl*, No. CV ADC-20-488, 2023 WL 4669551, at *5 (D. Md. July 20, 2023) (currently on appeal to the Fourth Circuit), Magistrate Judge Copperthite found a theory that an officer had planted evidence, based only on an alleged threat months before that he would plant something on the plaintiff, had too many "gaps" that needed "filling" and could not be sustained without corroborating evidence that the officer ever acted on the threat.  Without evidence "that

---

[8] Plaintiff admits there were no non-police witnesses to the Police Officer Defendants' execution of the Search Warrant on the Residence, which is when he claims evidence was planted. *See* Exhibit 20, Plaintiff's Supplemental Answers to Gladstone's Interrogatories, at 5 (Answer No. 8). Mrs. Cunningham testified that she was not present when the evidence was seized. Ex. 18 at 45:3-18; 63:20-64:11. And, it is undisputed that neither Mr. Cunningham nor Mr. Epperson were present during the execution of the Search Warrant. Ex. 17 at 33:13–22; Ex. 19 at 54:13–15.

4899-2526-8820, v. 1

would allow a reasonable jury to conclude" that the defendant had planted a gun on the plaintiff "and therefore did not have probable cause to arrest him," summary judgment was proper. *Id.* at *6.

Plaintiff's bald claim – that his family did not possess the items recovered and, therefore, the Officer Defendants must have planted them – is nothing more than speculation. *See Graves v. Lioli*, 930 F.3d 307, 324 (4th Cir. 2019) ("To support her view, [the plaintiff] weaves mischaracterizations of the record with pure speculation to contend that a jury could infer that her allegations actually occurred. That is not a valid means of surviving summary judgment, which requires evidence, not unsupported conjecture."). An unsupported conclusion will not create a genuine issue of material fact to defeat a motion for summary judgment. *See Dunn v. Eastern Petroleum*, Civil No. JKB-09-2851, 2011 WL 310400, *6 (D. Md. Jan. 26, 2011) (citing *Francis v. Booz, Allen & Hamilton*, 452 F.3d 299, 308 (4th Cir. 2006)). Stated differently, "[s]peculation alone cannot create a factual dispute." *Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022) (citing *Elliott v. Leavitt*, 99 F.3d 640, 644-45)). Accordingly, there is no *genuine* dispute of material fact as to whether the Officer Defendants planted anything in the Residence. There is simply no evidence at all that this occurred. On the other hand, each of the Officer Defendants has testified that he did not plant anything at the Residence. *See* Affidavits attached as Exhibits 21-26. When the only evidence in the record on this issue is that the Officer Defendants did not plant anything, the only possible conclusion flowing from that evidence is that they did not plant anything, and there is no room for any genuine dispute as to this issue. *See, e.g.*, *Anderson*, 477 U.S. at 252 (summary judgment is appropriate where the evidence is "so one-sided that one party must prevail as a matter of law"); *Hinkle*, 81 F.3d at 423 (claim is "ripe for an adverse summary judgment

determination" where "it was based upon a theory without proof" and "circumstantial evidence was probative of" the claim "only through speculation and the piling of inferences").

In the absence of any admissible evidence that the Officer Defendants planted anything, the undisputed facts show only that the Officer Defendants had probable cause to arrest and charge Plaintiff with narcotics and firearm offenses. As discussed above, the Search Warrant was obtained after a CI provided information to Det. Hankard that, in combination with an independent investigation, directly linked Plaintiff to the Residence and suspected drug dealing. Ex. 1 at 5-9. Upon execution of the Search Warrant, the Officer Defendants recovered marijuana, heroin, paraphernalia, a shotgun, and ammunition in the Residence, and in particular, in Plaintiff's bedroom. Ex. 2 at 2-5. Det. Hankard then obtained a warrant for Plaintiff's arrest and subsequently charged him. *See* Ex. 6. These facts establish probable cause. *See, e.g.*, *United States v. Gondres-Medrano*, 3 F.4th 708, 715 (4th Cir. 2021) (officers had probable cause where informant provided information independently corroborated by police officers as to defendant's drug-related activity).

The Officer Defendants had probable cause for Plaintiff's arrest and criminal charges even if Plaintiff did not actually possess the gun and the narcotics recovered. Stated differently, the Officer Defendants could have been ultimately mistaken as to Plaintiff's possession of the illegal substances and still have probable cause, as long as they reasonably believed Plaintiff constructively possessed them at the time he was arrested and charged. As stated above, it is undisputed that Plaintiff resided in the Residence on or around February 12, 2014. *See Brown*, 278 F.3d at 367-68 ("[T]here need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required."). Here, as shown above, the Officer Defendants unquestionably had probable cause to

charge and arrest Plaintiff after execution of the Search Warrant, and accordingly, they are entitled to summary judgment as a matter of law.

**B. The Officer Defendants Are Entitled To Summary Judgment On Count I Because, Under The Undisputed Material Facts, Plaintiff Cannot Establish The Necessary Element Of Malice Or Improper Motive.**

To prevail on a malicious prosecution claim, a plaintiff also must prove "'malice' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice.'" *See Villeda*, 219 F. Supp. 2d at 702 (quoting *Kelly*, 281 Md. at 693).

Here, summary judgment is warranted because Plaintiff has not offered any evidence supporting his bald allegation that Officer Defendants acted with malice or an improper motive. Rather, as discussed above, the *only* admissible evidence in this case demonstrates that the Officer Defendants recovered a firearm, narcotics, bullets, and paraphernalia in Plaintiff's Residence after conducting an investigation tying Plaintiff to suspected drug activity, and that his arrest and the charges against him were supported by probable cause. Further, none of the Officer Defendants knew Plaintiff or had any contact with him, including during the investigation, execution of the search warrant, or Plaintiff's arrest. *See* Ex. 8. at 100:9-102:21, 111:11-112:10. Because Plaintiff has not offered evidence of malice, summary judgment also is appropriate. *See, e.g.*, *Alvarez v. Montgomery Cnty.*, 147 F.3d 354, 360 (4th Cir. 1998) (affirming grant of summary judgment on malicious prosecution claim where the plaintiff advanced no evidence that the officers were acting out of a wrongful or improper motive).

**C. It is Undisputed that Officer Patzman Never Went Inside the Residence.**

Plaintiff's lack of any evidence to support his claim is all the more glaring as it relates to his claim against Officer Patzman. Officer Patzman never entered the Residence or the Vehicle. *See* Ex. 5 at 25:25:8-10. Instead, when Officer Patzman arrived on the scene, he walked his K9 dog to conduct a "sniff" around the Vehicle outside the Residence. *See id.* at 21:2-9, 24:7-25:17.

Officer Patzman then left the scene and had no further involvement with the criminal case. Based on those undisputed facts, Plaintiff's claim against Officer Patzman should fail.

## VI.    CONCLUSION

For the foregoing reasons, the Officer Defendants request this Court to grant their Motion and enter summary judgment in their favor.

Dated: July 9, 2025                    Respectfully Submitted,

                                  */s/ Christopher C. Jeffries*
Christopher C. Jeffries, (Bar No. 28587)
Louis P. Malick (Bar No. 11166)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland  21202
cjeffries@kg-law.com
lmalick@kg-law.com
(410) 752-6030 Telephone
(410) 539-1269 Facsimile

*Attorneys for Keith Gladstone, Michael O'Sullivan, Kenneth Patzman, Avraham Tasher, and Antonio Saunders*


*/s/ Thomas H. Barnard*
*signed by Christopher C. Jeffries with permission from Thomas H. Barnard*
Thomas H. Barnard, Fed. Bar No. 27488
tbarnard@bakerdonelson.com
Sabrina N. Marquez, Fed. Bar No. 30516
smarquez@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
100 Light Street, 19th Floor
Baltimore, Maryland  21202
Phone:  410-862-1185
Direct Fax:  410-547-0699

*Attorneys for Defendant Robert Hankard*